Lorna D. TOBIN

v.

**MAINE EMPLOYMENT SECURITY
COMMISSION and Maine School
Administrative District No. 57.**

Supreme Judicial Court of Maine.

Argued May 1, 1980.

Decided Oct. 1, 1980.

Sunenblick, Fontaine & Reben, Donald F. Fontaine (orally), Portland, for plaintiff.

Patricia McDonough (orally), Augusta, for defendants.

Before McKUSICK, C. J., and WERNICK, GODFREY, GLASSMAN and ROBERTS, JJ.

ROBERTS, Justice.

Lorna Tobin is a certified public school teacher in Maine with ten years of experience. In June, 1978, she left the Waterboro school system after six years of teaching to move to Mapleton as a result of her husband's relocation. She applied for work as a teacher in School Administrative District No. 1. After seven months, she was still unemployed. In January of 1979, the Maine Employment Security Commission disqualified her for refusing a job referral. The Superior Court affirmed the decision of the Commission and she has appealed to this court. We reverse the judgment of the Superior Court.

Under the relocation exception in the Maine Employment Security Act, Tobin qualified for unemployment compensation in July, 1978.[1] On January 30, 1979, she was referred to a job by the local employment office as a cannery worker at McCain's. There is no evidence in the record of any referrals by the local unemployment office to any jobs prior to January, 1979. The record discloses that the job opportunity was full–time work as a cannery worker at a pay rate of $3.38 per hour. Her prior salary for teaching was $12,000 per year and she had had no prior experience or training in the cannery business. As a result, she refused the referral to the cannery.

Under the usual administrative procedures, the deputy disqualified Tobin for refusing to accept the referral "when directed to do so by the local employment office." The appeal tribunal affirmed the deputy's decision after hearing. The findings of the tribunal included the following:

1. Plaintiff refused the job referral because the wages were too low, she was a teacher with ten years experience, and she was not trained or qualified to perform the work.

2. Acceptance of this work would hinder her search for work in the teaching field.

3. She has only one application for work on file (in S.A.D. No. 1).

4. S.A.D. No. 1 is the only place she has sought work in teaching and has applied nowhere else for other types of jobs.

5. At the time of the referral, she had no definite prospects for securing local work in her customary occupation.

The tribunal's decision was affirmed by the Commission without hearing or opinion.

■■■ We review the administrative record to determine whether there is any competent evidence to support the findings of the Commission. *Moore v. Dept. of Manpower Affairs*, Me., 388 A.2d 516, 518

---

1. 26 M.R.S.A. § 1193(1)(A) (1979 Supp.) provides in relevant part, "nor shall leaving work be considered voluntary without good cause if the leaving was necessary for the claimant to accompany, follow or join his spouse in a new place of residence and he can clearly show within 7 days upon arrival at the new place of residence an attachment to the new labor market and is in all respects able, available and actively seeking suitable work."

(1978). We must also review the Commission's action to determine whether within those findings the Commission has correctly applied the applicable law. In so doing, it is critical that we keep in mind the purposes of the Employment Security Act, *i. e.*, to promote the use of the highest skills of unemployed workers. 26 M.R.S.A. § 1042.

Disqualification of the plaintiff is based upon section 1193(3) of the Act which provides, in part, that an individual may be disqualified for benefits for "having refused to accept a referral to a suitable job opportunity when directed to do so by a local employment office." Subsection (3)(A) at the time of disqualification read as follows: [2]

A. In determining whether or not any work is suitable for an individual, the commission shall consider the degree of risk involved to his health, safety and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence.

█ Tobin suggests that there is insufficient evidence that a two-step process, arguably required by the statute, was actually followed in this instance. She urges that a referral to a suitable job opportunity must be followed by an express direction by the local employment office in order to support a disqualification. The Commission acknowledges that there are two kinds of referrals, some without direction and some with direction, but it does not accept the necessity of a two-step process. We also reject the necessity of two separate and distinct administrative steps in order to invoke the sanction of section 1193(3). We hold, however, that before giving such a direction the employment office should have made an administrative determination of suitability. We suggest that in the interests of fairness, the employment office should make clear which type of referral is being made and explain to the claimant the

consequences of refusal to accept a referral–direction.

Tobin maintains as a matter of law that the facts of this case do not support a total disqualification for benefits because of the "unsuitability" of the job referral after only seven months of unemployment. She does not contend that only a teaching position would be suitable but rather that the sphere of suitable employment had not expanded to the extent of including a menial job in a cannery at substantially lower pay.

The Commission acknowledges the statutory limitations of job suitability. It contends, however, that after seven months of unemployment and no definite job prospects in her customary occupation, Tobin was unjustified in refusing the referral.

█ We have previously said that, as the period of unemployment lengthens, the type of work that is suitable becomes more varied. *Lowell v. Maine Employment Security Commission*, 159 Me. 177, 183, 190 A.2d 271, 274 (1963). It is, of course, clear that the length of unemployment is but one of the factors that the Commission must weigh under section 1193(3)(A). Of equal importance, as illustrated in this case, are the claimant's prior training, experience, earnings, and prospects for securing local work in her customary occupation. No one factor is dispositive and the Commission is required to consider all of the elements. *Grace v. Maine Employment Security Commission*, Me., 398 A.2d 1233 (1979). Thus, the fact that the plaintiff had been unemployed for seven months does not, as a matter of law, make *every* job suitable. Conversely, training and experience alone does not, as a matter of law, make *any* job outside the employee's specialty unsuitable.

█ The Commission contends that the burden of proving unsuitability of a job referral–direction falls upon the claimant. We reject this contention because the Commission is in a unique position to substantiate its assertion of suitability and also because the remedial nature of the statute

---

**2.** Ch. 499 of P.L. 1979 substantially altered the test of suitability after twelve successive weeks

of unemployment in ways that we need not here consider.

dictates a liberal construction in favor of the employee. Thus, any disqualification, being penal in nature, must be strictly reviewed, cf. *Weaver v. Wallace,* Tenn., 565 S.W.2d 867, 869–70 (1978) (non–job–related misconduct), particularly when, as here, the claimant is unrepresented by counsel at the administrative hearing. *See Lawrence v. Leach,* 120 Ohio App. 411, 202 N.E.2d 703 (1964).

■ We hold, instead, that before making a referral–direction, a local employment office must take a determination of suitability of the job opportunity. From this, it necessarily follows that we also reject the Commission's contention, illustrated by *Bentz v. Unemployment Compensation Bd.,* 190 Pa.Super. 582, 155 A.2d 461 (1959), that the claimant must make a good faith investigation of a job before deciding its unsuitability.

■ We cannot determine from the record whether such an administrative determination was ever made, nor can we determine whether such determination could be supported. In fact, we cannot even determine what type of job was offered, other than that it was located in a cannery. The Commission has the initial burden of placing on the administrative record at the hearing sufficient evidence of the nature of the job opportunity to which it referred the claimant. In the absence of any such evidence, we cannot conclude that there was a referral–direction to a "suitable job opportunity."

Our holding herein is not inconsistent with *Proctor v. Maine Employment Security Commission,* Me., 406 A.2d 905 (1979), where we said that the employee had the burden of proving the lack of suitability of the job offer. The *Proctor* case involved placing the burden on the individual to prove that her physical limitations made the reoffering of the same or similar job by the former employer unsuitable within the meaning of 26 M.R.S.A. § 1193(3)(B)(4). In that situation, the claimant is in the unique position of being able to show her own disabilities, whereas here the Commission can more easily prove suitability. *See also*

*Therrien v. Maine Employment Security Commission,* Me., 370 A.2d 1385, 1391 (1977).

■ In the instant case, the Commission has failed to fulfill its duty of going forward with evidence of the nature of the job opportunity to support an administrative determination that Tobin had been directed to a suitable job opportunity. While the statute gives the Commission a great deal of discretion in determining whether the job opportunity is suitable, that discretion must be exercised on a rational basis. From a silent record we cannot confirm that the Commission had a rational basis.

■ We also note that the Commission has not used the less stringent sanction of weekly disqualification for failure to maintain a job search. 26 M.R.S.A. § 1192(3). It is apparent from the findings of the Appeal Tribunal that the Commission placed substantial emphasis on plaintiff's limited job search. Under section 1193, consideration of that element is improper.

■ Neither is there an explanation as to why the record contains no referrals at all by the Commission during the seven months of unemployment. Under these circumstances, we are inclined to attribute the failure to find other potentially more suitable work at least in part to the Commission. The employment office presumably is in a better position to investigate and suggest other types of jobs which would more fully utilize a claimant's skills than is the claimant herself. We do not, therefore, condone the use of the harsh sanction of disqualification in this situation.

We do not have before us any administrative record on which to determine Tobin's eligibility subsequent to her disqualification. Accordingly, we reverse the judgment of the Superior Court and remand with instructions to remove the disqualification based upon the January 30, 1979 job referral and to reinstate plaintiff's eligibility for benefits.

The entry is:

Appeal sustained.

Judgment of the Superior Court reversed.

Case remanded to the Superior Court for remand to the Employment Security Commission with instructions to remove the disqualification based upon the January 30, 1979 job referral and to reinstate plaintiff's eligibility for benefits.

All concurring.